UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN TOWER,

        Petitioner,

v.                              Case No. 07-cv-10485
                              Honorable Arthur J. Tarnow

RAYMOND BOOKER,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND ISSUING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS*

      Petitioner Kevin Tower, a state inmate currently confined at the Ryan Correctional Facility in Detroit, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for two counts of first-degree premeditated murder, two counts of felony murder, felony firearm, unlawfully driving away an automobile, forgery, and uttering and publishing. He was sentenced to life in prison without parole for the two counts of first-degree-premeditated-murder convictions, a consecutive two-year term for the felony-firearm conviction, forty to sixty months for unlawfully driving away a vehicle, and 112 to 168 months for each of the uttering and publishing and forgery counts. For the reasons stated, the Court will deny the petition. The Court, however, will issue Petitioner a certificate of appealability and an application to proceed on appeal *in forma pauperis*.

# I. Facts

The Michigan Court of Appeals set forth the relevant facts as follows:

> This case arose out of the murders of defendant's uncles, Ron and Paul Tower, aged fifty-seven and forty-one, respectively, in July 1995. The Tower brothers were single, lived together at a farmhouse in Remus, Michigan, and were mentally impaired to varying degrees. Ron Tower could not read, could write only his name, was not gainfully employed but performed chores around the farmhouse, was diabetic and depended on his brother for medication, and was extremely shy. Paul Tower could read and write, was employed as a custodian, maintained and administered his own bank accounts, and owned two vehicles, a truck and a 1992 red Ford Escort. The Tower brothers were last seen alive on the afternoon of July 5, 1995, with defendant, at their farmhouse. On July 6, 7, and 8, 1995, withdrawals were made from Paul Tower's savings account in Big Rapids. On July 9, 1995, Paul Tower's red Escort was abandoned at an accident scene in Grand Rapids. A witness later identified defendant as the driver of that vehicle and as having fled the scene. On July 13, 1995, human blood and hair were found in various buildings at the Tower farmhouse. On that date, Mecosta County Sheriff's Detective Richard Rau interviewed defendant, and on the following day Rau arrested defendant for uttering and publishing and unlawfully driving away Paul Tower's Escort.
>
> On July 26, 1995, partially decomposed bodies matching descriptions of Paul and Ron Tower were found in a remote area of Mecosta County. Both had been stabbed and shot with a .22 caliber weapon. Around August 15, 1995, defendant was additionally charged with two counts of murder, felony firearm, and forging signatures on savings withdrawal slips drawn on Paul Tower's savings account on July 6, 7, and 8, 1995. Defendant was convicted as charged and his motion for new trial was denied.

*People v. Tower*, No. 203366, 1999 WL 33446494, at *1 (Mich.Ct.App. Apr. 23, 1999).

# II. Procedural History

Following his sentencing, Petitioner filed an appeal of right in the Michigan Court of Appeals, raising what now forms his first habeas claim as well as six other claims that are not presented in this petition. The Court of Appeals affirmed his convictions. *People v. Tower*, No. 203366, 1999 WL 33446494 (Mich.Ct.App. Apr. 23, 1999).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Tower*, --- Mich. ---, 606 N.W.2d 656 (1999). Petitioner did not file a writ of certiorari in the United States Supreme Court.

On December 26, 2000, Petitioner filed a post-conviction motion, pursuant to Mich.Ct.R. 6.508(D), in the state court, raising what now form his remaining habeas claims, as well as a few claims that he did not present in this petition. After holding an evidentiary hearing, the trial court, in a twelve-page opinion, denied the motion. *People v. Tower*, No. 95-3702-FH (Mecosta County Circuit Court, Oct. 11, 2004).

Subsequently, Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, but the application was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Tower*, No. 265652 (Mich.Ct.App. May 4, 2006). Petitioner's application for leave to appeal the Court of Appeals' decision filed in the Michigan Supreme Court was denied on October 31, 2006, "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Tower*, 477 Mich. 913, 722 N.W.2d 807 (2006).

Petitioner filed the pending habeas petition, raising the following claims:

I. The admission of Petitioner's letters violated his Fourth, Fifth, and Fourteenth Amendment rights.

II. Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel at trial and on direct appeal.

III. The prosecutor's statement during rebuttal, that Petitioner was taking a plea to the property crimes deprived him of his Fifth, Sixth, and Fourteenth Amendment rights to have all elements of the criminal offense proven by the prosecution beyond a reasonable doubt.

3

IV. Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated because neither uttering and publishing, nor forgery, nor unlawfully driving away an automobile can be the underlying felony to the charge of felony murder in Michigan.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state-court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal-habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

4

## IV. Discussion

### A. Claim I–Alleged Fourth Amendment Claim

In his first habeas claim, Petitioner argues that his Fourth, Fifth, and Fourteenth Amendment rights to be free from unreasonable searches and seizures were violated. Petitioner wrote two letters while he was incarcerated: one to a material witness who was being held at the Mecosta County jail, and another to the witness' mother. Both letters were turned over to a detective. Each of the two letters contained information damaging to Petitioner. At trial, the letters were admitted into evidence. This claim is not cognizable on federal-habeas review.

Because "the exclusion of illegally seized evidence is simply a prophylactic device intended to deter Fourth Amendment violations by law enforcement officers," *Kaufman v. United States*, 394 U.S. 217, 224 (1969), the Supreme Court has determined that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also*, *Cardwell v. Taylor*, 461 U.S. 571, 572 (1983) (*per curiam*). Thus, Petitioner's claim is not cognizable on habeas review if he had an adequate opportunity to present his claim to the state courts. "For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which to raise the claim and the presentation of the claim in this case must not have been frustrated by a failure of that mechanism." *Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985) (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982), *cert. denied*, 459 U.S. 948 (1982)); *Willett v. Lockhart*, 37 F.3d 1271-72 (8th Cir. 1994). The requirement that there be, in the abstract, a mechanism by which to raise the Fourth Amendment claim "is met when state procedures provide a meaningful vehicle

5

for a prisoner to raise a fourth amendment claim." *United States v. Scarborough*, 777 F.2d 175, 182 (4th Cir. 1985).

There is no question that Michigan provides such mechanism, in the abstract, to raise and litigate Fourth Amendment claims. *See Markham v. Smith*, 10 Fed.App'x 323, 327 (6th Cir. 2001); *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). Nor has Petitioner offered anything to show that there was a failure of that mechanism. The trial court held an evidentiary hearing on the claim in which Petitioner presented whatever evidence he wished to support his argument. The trial court rejected the claim. Petitioner also raised the claim on direct appeal, and the claim was considered and rejected by the Michigan Court of Appeals.

Under *Stone* the correctness of the state courts' conclusions is simply irrelevant. The courts that have considered the matter "have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar." *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986) (citing cases); *see also*, *Willett*, 37 F.3d at 1270 (citing cases). An argument directed solely at the correctness of the state court decision "goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon*, 35 F.3d 1308, 1321 (9th Cir. 1994) (citing *Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990)). As succinctly put by the Seventh Circuit, "'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003). Here, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, and his habeas claim challenges the

6

correctness of the state courts' adjudications of that claim. Thus, Petitioner's claim is barred by *Stone*.

### B. Procedural Default

Respondent argues in his answer to the habeas petition that Petitioner's remaining claims may not be reviewed on their merits in this Court because they are procedurally defaulted. Petitioner first raised these claims in his post-conviction motion and the state courts denied relief pursuant to Mich.Ct.R. 6.508(D).

A federal habeas court need not address a procedural-default issue before deciding against the petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997), *cert. denied*, --- U.S. ----, 129 S.Ct. 1986 (2009) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's remaining claims.

### C. Merits of Habeas Claims II-IV

#### 1. Claim II–Alleged Ineffective Assistance of Trial and Appellate Counsel

Petitioner alleges that his trial and appellate counsel were ineffective. Respondent did not address these issues on their merits.

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1)

7

counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact. *See id.* at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If it is easier to dispose of the claim on the ground of lack of sufficient prejudice, that course should be followed. *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

Petitioner claims that his trial counsel was ineffective for failing to: (1) object to the letters that were admitted into evidence, (2) properly argue his motion for directed verdict, (3) offer an additional legal theory for the suppression of his letters, and (4) offer argument and authority challenging his felony-murder conviction on the grounds that the predicate felonies were not the proper underlying felonies to the charge of felony murder.

8

The trial court initially noted, in its opinion denying Petitioner's post-conviction motion, that Petitioner's trial and appellate counsel were the same. The trial court then went on to explain that it was denying the claims, noting, that Petitioner did not ask for a *Ginther*[1] hearing, and that Petitioner failed to establish "good cause for his failure to raise such grounds on his direct appeal or in a prior motion." *See Tower*, No. 95-3702-FH, at *7-9.

Upon review of the record, the Court finds that it is clear that trial counsel's strategy was to discredit the eyewitness testimony of the prosecution's witnesses, to establish doubt about the veracity and accuracy of Petitioner's letters, and to encourage the jury to distrust the criminal investigation of this matter. And, in addressing defense counsel's motion to vacate certain verdicts, specifically the predicate felonies, the trial court noted that the predicate felonies were committed during the commission of a larceny, and therefore the predicate felony was larceny. Thus, the charge was correct. (Sentencing Tr. 15-16, Dec. 19, 1996.)

The Court concludes that Petitioner has failed to establish that trial counsel was ineffective under the *Strickland* standard and finds that the trial court's decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Habeas relief is not warranted on Petitioner's ineffective-assistance-of-trial-counsel claim.

Petitioner also contends that his appellate counsel was ineffective for failing to raise his ineffective-assistance-of-trial-counsel claims on direct appeal. In order to succeed on this claim, however, Petitioner must show, among other things, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

---

[1]*People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973).

9

Petitioner has failed to show that his trial-counsel claims are meritorious. He therefore cannot show that appellate counsel was ineffective for failing to raise these claims on direct appeal. Accordingly, the Court concludes that Petitioner is not entitled to habeas relief on this claim.

### 2. Claim III–Alleged Prosecutorial Misconduct Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by commenting in rebuttal argument, after Petitioner's attorney conceded the offense of forgery and uttering and publishing, that Petitioner was entering a plea on those offenses. Respondent did not discuss the merits of this issue.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

The Sixth Circuit has adopted a two-part test for deciding whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir.2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id.* at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: (1) whether the statements tended to mislead the jury or prejudice the accused; (2) whether the statements were isolated or among a series of improper statements; (3) whether the

statements were deliberately or accidentally before a jury; and (4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Milton*, 201 F.3d 711, 716 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 540-550 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

The state trial court, in denying Petitioner relief on this claim in his post-conviction motion, stated in relevant part:

> The Defendant's trial attorney was apparently pursuing a strategy in his closing argument, . . . of essentially admitting the property/financial offense in the face of strong proof of such and to try to lead the jury away from the murder charges. Having done so, the Prosecutor's comment on those admissions was fair comment. The issue of the Defendant's guilt or innocence of those offenses still went to the jury. Any impairment of the Defendant's position on those offense was the result of a defense strategy, not any improper comments by the Prosecutor.

*Tower*, No.95-3702-FH, at \*10. This Court finds that the trial court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner has failed to establish that the prosecutor's argument was improper. Furthermore, even if the prosecutor erred, the comments were not so flagrant as to render Petitioner's trial fundamentally unfair.[2] Any potential prejudice was alleviated by the trial court's instructions. Habeas relief is not warranted on this claim.

---

[2]*But see Wilson v. Belt*, No. 09-1480, 2010 WL 78912, at \*10 (6th Cir. Mar. 9, 2010) (Clay, J., dissenting, indicating that it was "patently improper for a prosecutor to comment on the credibility of a witness").

### 3. Claim IV–Predicate Felonies for Felony Murder

Finally, Petitioner argues that the predicate felonies, forgery, uttering and publishing, and unlawfully driving away an automobile, are not proper underlying felonies for felony murder.

Here, the jury found Petitioner guilty of first-degree murder under two alternative theories, first-degree premeditated murder and felony murder. However, the trial court sentenced him to life in prison for the first-degree-premeditated-murder convictions.

At sentencing, in addressing defense counsel's motion to vacate certain verdicts, the trial court stated:

> I preface my comments here to indicate that the defendant is here before the Court on two counts of murder in the first-degree, one count of felony firearm, one count of unlawfully driving away a motor vehicle, one count – well, it's listed as one count of forgery, one count of uttering and
>
> publishing but, as I recall, there are actually a number of separate offenses all under each of those.
>
> * * *
>
> Regarding the two counts of murder in the first degree, I hereby commit you to the Michigan Department of Corrections for your natural life, no parole.

(Sentencing Tr. 37, Dec. 19, 1996.)

Then, in its opinion denying Petitioner's post-conviction motion, the trial court stated in pertinent part:

> First, I do not find that the Defendant has adequately established good cause for this grossly belated raising of this issue. More importantly, however, in looking at the evidence against the Defendant at trial, it is apparent that the State's theory against the Defendant was that he murdered his uncles as part of a broad scheme to acquire money and property from them in multiple ways, some of which unquestionabl[y] involved thefts and other offenses
> proper to assert as predicates to felony murder. Therefore, the Defendant loses on the merits of this argument as well as procedurally.

12

> Parenthetically, it must be noted that the Defendant was not sentenced for the felony murders, but rather the State chose to have the murder sentences imposed on the first-degree murder charges. Neither side has addressed this issue, but [it] seems that such renders arguments regarding the felony murder charges moot.

*Tower*, No. 95-3702-FH, at *11.

After a careful review of the record, the Court agrees with the trial court's assessment; Petitioner was sentenced to life in prison, without parole, for the two counts of first-degree-murder convictions.[3] (Sentencing Tr. 37, Dec. 19, 1996.) Therefore, any arguments regarding the felony-murder convictions are moot.

With that in mind, the Court finds that the trial court's decision regarding this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner is therefore not entitled to habeas relief on this claim.

### D. Certificate of Appealability

"[A] prisoner seeking post-conviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529

---

[3] However, pursuant to the Michigan Department of Corrections' website (www.Michgan.gov/corrections), Petitioner was sentenced to life in prison for first-degree-premeditated murder and felony murder. According to the Sentencing Transcript that information is incorrect.

13

U.S. 473, 484 (2000). "[A] claim can be debatable even though every jurist of reason might agree, after the [certificate of appealability] has been granted and the case has received full consideration, that [the] petitioner will not prevail." *Miller-El*, 537 U.S. at 338.

Reasonable jurists could debate the Court's resolution of Petitioner's constitutional claims or conclude that the issues deserve encouragement to proceed further. The Court therefore **ISSUES** a certificate of appealability on Petitioner's claims. Petitioner may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a) (3).

### V. Conclusion

For the reasons stated above, this Court concludes that Petitioner Tower is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court **ISSUES** Petitioner Tower a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated: March 19, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 19, 2010, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary